GREEN, ,J.
The. first inquiry in these cases is, whether Beverley’s demand is tainted and destroyed by usury? And this depends upon the question as to the competency of George Pickett as a witness. If he is competent, the proof of usury is full and complete, and the question as to the effect of his letter to Beverley of the 11th June 1818, would arise. If he is not a competent witness, the other evidence *in the cause, though sufficient to excite strong suspicions, does not amount to satisfactory proof of usury.
Pickett, if Beverley’s claim was valid to any purpose, was his debtor, and a party defendant in his suit, under such circumstances, that if the claim to satisfaction, in whole or in part, out of the land, either under the deed to Mason or under those to Scott, were established, Pickett would have been liable to a personal decree for any balance not satisfied out of the land, and for the costs. . But if, on the other hand, Beverley’s claim to satisfaction out of the land were repudiated, then, even though Pickett might be still personally responsible in consequence of his letter, Beverley’s bill must have been dismissed with costs as, to Pickett, as well as to the other defendants, since the only ground of jurisdiction against Pickett, was the plaintiff’s right to subject the land. In respect to the' costs, therefore, at least, he had a direct interest in the event of the cause, depending upon the very point to which he testified. His evidence must, consequently, be rejected, unless the course taken by Beverley has sanctioned it.
His bill did not ask any specific relief against Pickett, particularly; but it prayed general relief; and that was sufficient to' found any decree against any of the parties, which the state of the case at the hearing would justify. Pickett answered, that having surrendered all his interest in the land upon taking the benefit of the insolvent debtor’s law, and the sheriff having sold that interest, for a sum not more than sufficient to satisfy the execution under which he surrendered, he had no longer any interest in the property, and he, therefore, disclaimed all interest in the subject of controversy; that is, between the other parties, as to the land. But he did not, and could not disclaim his interest in his own personal liability. Beverley put in no replication to this disclaimer; and that, it was argued, - put Pickett out of court as a party. That may be a just rule, when the answer, followed by a disclaimer, is such as, if true, would shew that the party could have no interest in the decree-in any event, and the plaintiff admits it to be true by failing to *reply to it. But, in this case, the answer being true, there could be no occasion to traverse it; and yet it shewed, upon its face, that the defendant had still an interest in the cause, and was liable to a personal decree, if the plaintiff was properly in court in respect to the land.
After the answer and disclaimer of Pickett were filed, Beverley procured an order for a special commission to take his deposition, subject to all just exceptions at the hearing. But he never took out and acted on the commission. The deposition was taken under a commission awarded by a special order to the same effect, made at the instance of the defendant Scott. The circumstance of Beverley having asked for a commission, cannot, in reason, preclude him from objecting to the competence of the witness; and no authority was cited in support of that proposition.
Finally, though there was an indorsement on the envelope of the deposition, in the hand writing of Beverley’s counsel that he excepted to the reading of the deposition (particularly describing it) on account of the witness’s interest in the event of the cause; yet it was not signed by the counsel, nor does it appear that the attention of the court was called to the exception, or that the court decided upon it. This frequently occurs in the records which come to this court, and as to depositions taken under general commissions, presents serious difficulty. But that difficulty does not exist in the case of a special commission, saving in terms, all just excep *389 tions for the consideration o± the court ,at the hearing; and, consequently, devolving on the court the duty to take notice, ex officio, of objections to the competency of the witness, arising from his interest in the event of that very cause; a question which cannot be affected by any collateral proofs.
Upon the whole, I think that Pickett’s deposition should be rejected. And the chancellor seems to have disregarded it.
According to the views that have occurred to me, in respect to the priorities of the several parties claiming satisfaction of their debts out of the property in question, it is wholly immaterial whether the deed of trust to Mason under *which Beverley claims, be considered as a deed admitted to record on the 5th May 1820, or the 25th December 1822, or as remaining an unrecorded deed to this day. I4o judgment creditors of Pickett appear, except one, who had his judgment before the 5th May 1820, and before Pickett’s first deed to Scott, (namely, James English) and such as obtained their judgments after the execution of both the deeds to Scott, viz. Letty Ball and John Laird.
As to the first, English’s judgment, it overreaches all those deeds, and operated as a lien on all the debtor’s lands, which has not in any degree been impaired. He, and the sureties of Pickett to him, have been guilty of no laches or other act to impair its force. The judgment was rendered in September 1819, and injoined in January 1820. The injunction was perpetuated in pari, and dissolved in part, in May 1826, and an appeal taken from the decree, which, as far as appears, is still depending. Nor has English received any thing under the deeds to Scott; nor does he appear to have been privy or consenting to them. A sum has been retained in the case of Weaver v. Pickett and others, on account of his claim, subject to the future order of the court. If he had claimed under the deeds to Scott, that would not have barred him of his election to resort to his original security, the lien of the judg-ment, if at any time before the final disposition of the fund, he had found it to be his interest to do so. Cod wise v. Galston, 10 Johns. Rep. 517. It was, however, insisted on the part of Beverley, that no part of this debt should be charged upon the lands conveyed to Mason; because, before Pickett conveyed the residue of his lands to Scott, if that residue had been extended, Pickett could not have claimed contribution from the lands conveyed to Mason, whom he was bound to indemnify; and, in equity, the residue of the lands should, in that case, be applied to the satisfaction of the judgment in exoneration of those conveyed to Mason. And this is certainly true, for neither a debtor nor his heir can claim contribution in such a case against the alienee of a part of the land bound by the judgment. *Erom this it was argued, 1 that Scott, the second alienee, and those claiming under the deeds to him, should stand in Pickett’s shoes in that respect, and that residue first subjected to the satisfaction of the judgment, as far as it will go, in exoneration of the land conveyed to Mason. Upon this subject, the law is perfectly settled. All the alienees of the lands of a debtor bound by a judgment or recognizance, no matter in what order the alienations were made, are bound to bear equally the burden of satisfying the judgment, b3* mutual contributions, pro rata, according to the value of the property held by them ; all being considered as in asquali jure, without regard to the priority of their purchases or conveyances. Authorities for this doctrine are referred to in 5 Vin. Abr. Contribution and Average, A. pi. 3, 4, 6, 7, 12, 19, p. 561, 2; Herbert’s case, 3 Rep. 12. There is no pretence for calling upon Pickett’s sureties, against whom the judgment was also rendered, for contribution. If there was such a right at law, equity would control it, by substituting the surety to the lien of the judgment upon the land of the principal debtor, no matter in whose hands it was. This, however, was not claimed. This judgment should be satisfied out of the proceeds of the lands conveyed by Pickett to Scott had already sold, and that in controversy, pro rata, in proportion to the neat amount of the sales thereof respectively. But if, in the case of Weaver v. Pickett, the proceeds of the land sold have been so disposed of as that that portion of English’s judgment which ought to be paid out of that fund, cannot now be fully satisfied out of it (a question which cannot be examined here) still the land remaining unsold can only be charged with its due proportion, to be ascertained as aforesaid.
Letty Ball’s judgment being subsequent to the execution and recording of both of the deeds to Scott, operated as a lien, not upon the land in question, the legal title to which, as to her, was vested in Scott, but upon Pickett’s equity of redemption, or his interest in the surplus, if any, of the fund conveyed to Scott, after satisfying all the purposes of the *deeds to him; that is, after paying all Pickett’s debts, including that to Beverley, in the order specified in the deeds. The execution of the ca. sa. destroyed this lien, and the discharge of Pickett under the insolvent laws, vested his equity of redemption, or interest in that surplus, if any, in the sheriff for her benefit; and that again was vested in Brooke by the conveyance of the sheriff. The proceedings under the ca. sa. also vested in the sheriff, for the benefit of the creditor, all the property of the debtor conveyed by him by any conveyance made void by the statute of frauds and perjuries, as being in fraud of creditors, or by the statute of conveyances, as not being duly recorded ; as was held in the case of Shirley v. Long, 6 Rand. 735. So that, if there had been no conveyance by Pickett of the land in question, other than that to Mason, and that were unrecorded at the time of the execution of the ca. sa. the legal title would have passed to the sheriff, and from him to Brooke, in opposition to that deed. But there was another unimpeached and duly recorded deed, providing for the payment of Beverley’s debt, which, putting the deed to Mason out of the case, as if it had never been made, would give Beverley a preference over Brooke, claiming not under the *390 deed to Scot!, but only as a purchaser of the title of the sheriff under Pickett’s schedule and surrender of his effects.
Laird’s judgment being subsequent to the ca. sa. and the proceedings under it, operated as a lien upon nothing; for Pickett then had. no scintilla of interest, legal or equitable, in any thing, real or personal; the sheriff having sold all his interests, for a sum not more than sufficient to satisfy the execution under which he was taken, and thus annihilated even his interest in any surplus which might arise from the sale of his mortgaged property. If there had been a surplus, Laird’s judgment would have operated as a lien upon that: but there was none. Laird, therefore, can claim nothing, but as a creditor under the deeds of trust to Scott, without any aid from his judgment, which gives no additional strength to that claim. And his claim stands precisely as it would, if he had not obtained judgment.
^Allowing the preference to Eng-lish’s judgment to the extent stated, the question arises between Beverley and those claiming only under the deeds to Scott, including Laird, as to the order in which the residue, after satisfying Eng-lish’s judgment, shall be applied; whether according to the terms prescribed by the deeds to Scott, putting Beverley in the last class of creditors to be satisfied, upon the ground, that the deed he claims under is void as to all Pickett’s creditors claiming under the deeds to Scott, because not recorded; or to the satisfaction of Beverley’s claim in preference to the creditors claiming under the deeds to Scott, upon the ground that it was in fact recorded before those deeds were executed, or that Scott, and consequently, those claiming under him, had notice of the deed to Mason, before the first deed to Scott was executed? I have already' said, that it is unnecessary to any purpose in this cause, to decide whether the deed to Mason ought to be considered as a deed admitted to record on the Sth May 1820, or on the 25th December 1822, or remains a deed not duly recorded to this day; and I mean to give no opinion on that point. It is, in every view, unimportant; because the first deed to Scott, conveying the property in question, was executed and admitted to record, before the deed to Mason was delivered to the clerk; and the second deed to Scott does not impair the force of the first, for it is upon the same trusts precisely, and differs from it only in specifying the property conveyed more particularly, and conveying other property. So that those claiming under the first deed to Scott, would have an unquestionable priority to Beverley, unless Scott took that conveyance, as well as the last, with such a notice of the existence of the deed to Mason, as made it good against him, and all claiming any benefit under the deeds to him.
Such a notice I think he had: he was explicitly informed, that a deed for a part of the land was given to secure a debt to Peter Beverley, and, at the same time, that the debt was usurious. This notice made the deed as valid against him, at all claiming under the deeds to him, as if it had been *duly recorded, liable to be impeached for usury, as it would have been if recorded, and no otherwise. It had the same effect, as a notice of the existence of the deed, with a declaration by Pickett that he had paid the debt, would have had; and that surely could not have been considered as, per se, without any other proof of payment, destroying the effect of the notice of the existence of the deed.
Upon the whole, the land conveyed by the deed to Mason should be sold under the direction of the court of chancery; the just proportion charged upon it in favour of English’s judgment, and applied towards the satisfaction thereof, in the first place; and then the proceeds applied to the debt secured to Beverley, and the costs of his suit; and the surplus, if any, distributed according to the order prescribed in the deeds to Scott.
The other judges concurred, and the decree was reversed with costs.